Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 *************
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant is a qualified self-insured with Key Risk Management Services, Inc., as the servicing agent.
4. Plaintiff's last day of work with defendant-employer was 15 April, 1993.
5. The following documents are stipulated into evidence:
a. Medical records of Dr. Stephen Naso
b. Medical records of Dr. Emmett H. Dyer
c. Medical records of Dr. Leonel Limonte
d. Medical records of Dr. Robert Jones
e. Industrial Commission Form 22
f. Plaintiff's employment records
6. The issues for determination are:
 a. Did plaintiff sustain a compensable occupational disease as a result of her employment with defendant-employer?
b. To what extent is plaintiff disabled?
c. To what benefits is plaintiff entitled?
 ************* EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Naso, Dr. Dyer and Dr. Limonte are ruled upon in accordance with the law and the decision in this case.
 *************
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff is a fifty-one year old woman who has a high school equivalency diploma and two years of community college education in secretarial skills. Plaintiff's previous work experience included working as a waitress in several temporary and summer jobs, as a secretary in several short-term jobs through her work-study program at school, as a billing clerk for a trucking company, and as a scheduling clerk for a heating and air conditioning company.
2. Plaintiff worked for defendant-employer from October 1988 until 15 April 1993. Plaintiff's duties included entering data into a computer, generating reports, typing correspondence and providing clerical support for four company managers in addition to the plant manager. Plaintiff worked between eight and ten hours per day, five days per week, often working overtime as needed. Plaintiff typed or keyed from six to ten hours per day while employed for defendant-employer.
3. While plaintiff received good reviews in 1989, 1990 and 1991, she received a negative performance appraisal in December 1992.
4. Plaintiff resigned from her employment with defendant-employer on 15 April 1993 to avoid being terminated for deterioration of her work product.
5. Plaintiff presented to Dr. Robert Jones on 26 April 1993 for complaints of hand and wrist numbness. Dr. Jones diagnosed plaintiff as having overuse tendinitis of the arms.
6. Plaintiff reported her problem to defendant-employer and was sent to a physician. Plaintiff was seen by Dr. Naso on 7 May 1993. Dr. Naso diagnosed plaintiff as suffering from tendinitis and released her with no restrictions. Plaintiff had negative Tinel and Phalen's tests and as a result no nerve conduction studies were completed.
7. Subsequent to her resignation from defendant-employer, plaintiff applied for unemployment benefits. In order to receive unemployment benefits, a person must be capable of working.
8. Plaintiff received unemployment benefits from May 1993 until November 1993, in the amount of $5,152.00.
9. In November 1993, plaintiff began work as a layaway clerk at Belk's Department Store. Her duties in that position aggravated her symptoms of pain and swelling in her hands and she left that job after three weeks.
10. Plaintiff next began a position as a cashier at Burger King. Her duties included taking orders, running a cash register and bagging items. Her duties as a cashier augmented her symptoms of hand pain and she resigned after three months.
11. Plaintiff also worked as a home health aide for Communication Network Consultants. Due to an aggravation of her hand symptoms, she subsequently left that employment.
12. Plaintiff next sought medical treatment on 22 August 1994 from Dr. Limonte. Dr. Limonte, whose practice consists of approximately thirty percent of nerve related hand injuries, ordered a nerve conduction study. The study indicated plaintiff had a thirty percent (30%) reduction of the velocity of nerve conduction across the median nerve. Dr. Limonte diagnosed plaintiff as having carpal tunnel syndrome.
13. Dr. Limonte then referred plaintiff to Dr. Emmett H. Dyer, neurosurgeon in Charlotte, to evaluate the possibility of surgery. Dr. Dyer reviewed the nerve conduction study, examined plaintiff and determined that surgery was indicated. He performed a bi-lateral median nerve release on 21 June 1995. Plaintiff was released without restrictions in July 1995.
14. Plaintiff has not proven by a preponderance of the competent, credible evidence of record that her job at defendant-employer caused her carpal tunnel syndrome. The medical evidence does not establish a causal relationship between plaintiff's symptoms while working at defendant-employer's and her subsequent carpal tunnel syndrome.
15. Plaintiff's symptoms of hand pain were augmented by her subsequent jobs after her departure from defendant-employer. According to Dr. Limonte, plaintiff's symptoms should have improved after leaving her position with defendant-employer. Dr. Dyer agreed that symptoms of carpal tunnel syndrome often subside after an individual is no longer exposed to the causative factor. While all of the doctors plaintiff consulted recognized that typing is a known cause of carpal tunnel syndrome, they also agreed that other causes could not be ruled out in plaintiff's case.
16. Plaintiff's work subsequent to her resignation from defendant-employer augmented her symptoms of pain, swelling and numbness in her hands and led to the development of carpal tunnel syndrome after she left her employment as a typist. Plaintiff did not seek medical treatment for her symptoms between May 1993 and August 1994. It was during this time period that she worked for other employers. Plaintiff testified that she left all of these employers because of increased pain in her hands. When Dr. Naso examined plaintiff in May 1993, she had negative Tinel's and Phalen's signs. However, when she was examined by Dr. Limonte in August 1994, fifteen months after her resignation from defendant-employer and after her employment as a layaway clerk at Belk's, a cashier at Burger King and a home health aide for Communications Network Consultants, plaintiff tested positively for carpal tunnel syndrome, demonstrating bilateral Tinel's and Phalen's signs.
17. Plaintiff was last injuriously exposed to carpal tunnel syndrome while working with employers subsequent to defendant-employer.
18. The majority of the competent, credible evidence of record does not support a finding that plaintiff's employment with defendant-employer significantly contributed to her carpal tunnel syndrome. Plaintiff was not diagnosed with the occupational disease until two years after her resignation from defendant-employer and after subsequent positions which aggravated her symptoms. Therefore, plaintiff has failed to establish a causal relationship between her complaints of carpal tunnel syndrome and her position with defendant-employer.
 *************
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's last injurious exposure to the risk of developing or augmenting carpal tunnel syndrome occurred subsequent to her employment with defendant-employer. N.C. Gen. Stat. § 97-57; Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
2. Since plaintiff's last injurious exposure to carpal tunnel syndrome occurred subsequent to her employment with defendant-employer, she is not entitled to compensation for an occupational disease. Jones v. Beaunit Corp., 72 N.C. App. 351,324 S.E.2d 624 (1985).
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim must be and hereby is DENIED.
2. Each side shall bear its own costs.
This the ___ day of September 1998.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER